**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| COMSCORE, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE NIELSEN COMPANY (US), LLC and NETRATINGS, LLC d/b/a NIELSEN ONLINE, <br><br> Defendants. | Civil Case No. 1:11-CV-290 LMB-TRJ <br><br> JURY TRIAL REQUESTED |

**PLAINTIFF COMSCORE, INC.'S
OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

At the Case Management Conference on April 20, Defendants The Nielsen Company (US), LLC and NetRatings, LLC (collectively, "Nielsen" or "Defendants") explained that this case was different enough from *The Nielsen Company (US), LLC v. comScore, Inc.*, No. 2:11-cv-00168-MSD-TEM (E.D. Va.) (the "Norfolk action" or "*Nielsen v. comScore*"), such that they had not sought transfer. Nielsen repeats that position in its transfer motion, acknowledging that this Alexandria action has been a "narrow and focused inquiry," a "limited case," and a "separate matter" that can be handled "quickly." Mem. at 10. Indeed, Nielsen answered the complaint in three days and then proceeded with separate, comprehensive discovery for this case one day after the Court's order permitting discovery, serving interrogatories covering nearly every issue in the case and 91 separate document requests addressing this case—without even raising the possibility of transfer. comScore has already served preliminary responses to those 91 requests, with final responses due on Thursday, and comScore has served its own interrogatories and

document requests on Nielsen. The parties are in the thick of preparing document productions, with productions starting in mid-May or sooner.

Nielsen reversed its position on transfer after the Court issued its Rule 16(b) Scheduling Order, *see* Dkt. No. 25, rejecting Nielsen's request to slow down the schedule for providing invalidity contentions for the patent-in-suit, U.S. Patent No. 7,260,837 (the "'837 patent"). In response to comScore's request to add U.S. Patent No. 7,930,285 (the "'285 patent")—a related patent that issued on April 19, 2011 (the day before the Scheduling Order)—Nielsen filed this late motion to transfer, in which Nielsen now claims that the two cases involve the "same technology" and should be consolidated in the interest of judicial economy. Mem. at 1. Nielsen's reversal in position, however, cannot be explained by the addition of the related '285 patent, which contains a specification that is identical (in all material respects) to the specification of the '837 patent. Both patents relate to technology for identifying users of computer technology that, as Nielsen recognized at the Case Management Conference, differs from the technology at issue in the Norfolk action.

By focusing on the alleged similarities between the technology in the two cases, Nielsen not only takes a position that is at odds with its position at the Case Management Conference, but also disregards that its motion rests on a statute directed to "the convenience of parties and witnesses" and "the interest of justice," 28 U.S.C. § 1404(a). The salient transfer factors—most of which are never addressed in Nielsen's motion—counsel heavily in favor of allowing Reston, Virginia-based comScore to promptly continue to bring this "narrow and focused inquiry" and "limited case," to a "quick[]," Mem. at 10, conclusion. The doors of the Alexandria courthouse should not be closed to a local resident based on Defendants' effort to slow down this litigation by intermeshing it with the Norfolk action—in which a motion to dismiss is pending and a case

management conference is at least weeks away; such a slow-down of the proceedings will neither advance resolution on the merits nor any possibility of settlement. Nielsen's untimely transfer motion should be denied.

**BACKGROUND**

A.   Procedural Background

comScore, which is based in Reston, Virginia, filed this case on March 22, 2011. Dkt. No. 1. Nielsen was served on March 23. Dkt. Nos. 10, 11. Despite the fact the Norfolk action was filed on March 15, Nielsen did not file a transfer motion in response to comScore's complaint. Rather, Nielsen answered comScore's complaint on March 25, only three days after comScore filed this action. Dkt. No. 6. The Court issued a Scheduling Order on March 30, setting a final pretrial conference for August 18, 2011. Dkt. No. 16. The parties immediately exchanged discovery requests on March 31 and April 1; Nielsen served its responses on May 2; comScore's responses are due on May 5.[1] Initial disclosures were exchanged on April 26. The parties have held several meet-and-confer conferences regarding discovery and filed a stipulation regarding electronic discovery on May 3. Nielsen and comScore also are close to finalizing a protective order, in preparation for exchanging expert reports on July 1 and completing discovery by August 12. By contrast, no scheduling conference has been set in the Norfolk action, and no discovery has taken place.

B.   Factual Background

Although Nielsen's motion repeatedly mentions an agreement relating to "cross-use of . . . documents in both cases," Mem. at 1, 12, Nielsen repeatedly neglects to mention that this

---

[1]   Contrary to Nielsen's statement that "[r]esponses to these discovery requests have not yet been served," Mem. at 4, comScore already served on April 18 preliminary responses to Nielsen's 91 document requests. Nielsen's responses were due to be served, and were served, one business day after Nielsen filed its motion.

agreement, by its terms, was "reached . . . solely for the purpose of convenience of counsel, without expressing any position on the relevance of such materials to either case." Dkt. No. 22, para. V(E). Indeed, when asked at the Case Management Conference to describe documents that might be responsive to both cases, neither side could name specific documents. The cases involve different patents, products, and inventors, with no overlap.

For the '837 patent, two of the three inventors reside in this Division; the third is in California. *See* Ex. A to Compl., Dkt. No. 1. For the '285 patent, three of the four inventors reside in this Division; the fourth is in Illinois. *See* Ex. B to Dkt. No. 26-1. Nielsen has listed all of these individuals on its Initial Disclosures as potential witnesses. Ex. B; *see also* Ex. A.[2] With respect to prosecution attorneys, Nielsen has identified as potential witnesses four prosecution attorneys based in Washington, D.C., three based in Alexandria, Virginia, and one based in Texas. The majority of comScore's documents will come from its Reston headquarters in this Division. comScore is not aware of, and Nielsen has not identified, any documents or witnesses located in the Norfolk Division.

In the Norfolk action, Nielsen has sued comScore on five patents. None of the inventors for those patents are based in Virginia. *See* Exs. A through E to Compl., Dkt. No. 1, *Nielsen v. comScore*. Contrary to Nielsen's broad assertion that the Norfolk action and this case involve "similar technology," Mem. at 3, the patents asserted in both cases involve separate and disparate technologies, requiring separate claim construction proceedings and development of separate records. That is, the two patents at issue in this case involve the identification of users, while the *Nielsen v. comScore* patents relate to the collection of data:

---

[2] All exhibits are attached to the Declaration of Brian Bieluch in Support of Plaintiff comScore Inc.'s Opposition to Defendants' Motion to Transfer, attached to this motion as Exhibit 1.

| *comScore v. Nielsen* | | *Nielsen v. comScore* | |
|---|---|---|---|
| U.S. Patent No. 7,260,837 | "*Several ways of identifying users* and collecting demographic information and market information are disclosed, including branding a browser with a unique identification in each user request, identifying a user by his key strokes or mouse clicks, gathering demographic information using multiple data sets and by monitoring network traffic."<br><br>Abstract, Ex. A, Dkt. No. 1, (emphasis added). | U.S. Patent No. 6,115,680 | "The subject system *measures and reports the use* of a personal computer by a user through a log file."<br><br>Abstract, Ex. A, Dkt. No. 1, *Nielsen v. comScore* (emphasis added). |
| U.S. Patent No. 7,930,285 | "*Several ways of identifying users* and collecting demographic information and market information are disclosed, including branding a browser with a unique identification in each user request, identifying a user by his key strokes or mouse clicks, gathering demographic information using multiple data sets and by monitoring network traffic."<br><br>Abstract, Ex. B, Dkt. No. 31-1, (emphasis added). | U.S. Patent No. 6,418,470 | "*Web content* received by a computer *is processed* such that a reference to a control is inserted in HTML received by the computer and the control is executed in response to the reference in order to process the web content in the received HTML."<br><br>Abstract, Ex. B, Dkt. No. 1, *Nielsen v. comScore* (emphasis added). |
| | | U.S. Patent No. 7,376,722 | "A method and system for analysing and *measuring multiple sources of data* over a communication network . . . so as to |

|                          |                                                                                                                                 |
|--------------------------|---------------------------------------------------------------------------------------------------------------------------------|
|                          | ascertain information or usage of one or more resources, such as resource servers . . . ."                                      |
|                          | Abstract, Ex. C, Dkt. No. 1, *Nielsen v. comScore* (emphasis added).                                                            |
| U.S. Patent No. 7,386,473 | "The invention can enable *monitoring of the display of content* by a computer system."                                         |
|                          | Abstract, Ex. D, Dkt. No. 1, *Nielsen v. comScore* (emphasis added).                                                            |
| U.S. Patent No. 7,613,635 | "The invention can enable *monitoring of the display of content* by a computer system."                                         |
|                          | Abstract, Ex. E, Dkt. No. 1, *Nielsen v. comScore* (emphasis added).                                                            |

## ARGUMENT

Nielsen makes several errors in setting out the law applicable to transfer. Employing a scattershot approach, Nielsen invokes three distinct legal avenues in support of its motion: 28 U.S.C. § 1404(a), 28 U.S.C. § 1404(b), and the first-filed doctrine. As explained below, § 1404(b) and the first filed rule have no applicability to this case. Moreover, properly applying the factors governing a transfer analysis under § 1404(a)—which looks to the convenience of the parties and witnesses, and the interest of justice—Nielsen has failed to meet its burden to show that this case should be transferred to Norfolk. All factors counsel in favor of allowing Reston-based comScore access to the Alexandria courthouse to litigate its claims: The vast majority of potential witnesses are based in this Division, this forum is far more convenient for comScore

(and, indeed, Nielsen's Washington, D.C.-based attorneys), the sources of proof are located in this Division, and this dispute represents a narrow, separate matter, not arising out of the same transaction or occurrence as the Norfolk action. Nielsen's motion also ignores the significant consideration that numerous comScore employees and inventors, which Nielsen has identified as potential witnesses, would have to unnecessarily travel to Norfolk if Nielsen's motion were granted.

A transfer would further prejudice comScore given Nielsen's delay and about-face in seeking a transfer. Significant work has already been done to ready this case for trial, with the final pretrial conference being only three and a half months away. The Norfolk case, by contrast, is at a much earlier stage; comScore has filed a motion to dismiss, which is not fully briefed, and a case management conference is weeks away. Granting Nielsen a transfer at this stage would effectively provide Nielsen a do-over, delaying the resolution of this litigation and burdening the *Nielsen v. comScore* court with an unrelated litigation. No interest is served by such gamesmanship.

I.   **Section 1404(a) Governs Nielsen's Motion**

Section 1404(a) of Title 28, United States Code, provides that "[f]or *the convenience of parties and witnesses*, in the *interest of justice*, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* (emphases added). In several recent published opinions, none of which is analyzed by Nielsen, the Federal Circuit has offered significant guidance in the past few years regarding motions to transfer. Although Nielsen suggests that a § 1404(a) transfer analysis may turn exclusively on the "interest of justice" factor "regardless of other convenience factors," Mem. at 6, the Federal Circuit has recently held that "[a] motion to transfer under § 1404(a) calls upon the trial court to *weigh a number of case-specific factors* relating to the convenience of the parties and witnesses, and the

proper administration of justice, based on the individualized facts on record." *In re Microsoft Corp.*, 630 F.3d 1361, 1363 (Fed. Cir. 2011) (emphasis added). Specifically, § 1404(a) calls for "'individualized, case-by-case consideration of convenience and fairness.'" *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The Federal Circuit has looked to regional circuit law in analyzing factors to be used in making transfer determinations. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1254 (Fed. Cir. 2010) (applying Fifth Circuit law and collecting Federal Circuit citations). *Acer* employed "the public and private factors used in *forum non conveniens* analysis." *Id.* Private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive." *Id.* Public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law." *Id.* (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008)). The Fourth Circuit, and courts within the Circuit, have looked to similar considerations. *See In re Ralston Purina Co.*, 726 F.2d 1002, 1005-06 (4th Cir. 1984); *Bd. of Trustees, Sheet Metal Workers Nat. Fund v. Baylor Heating & Air*, 702 F. Supp. 1253, 1256–62 (E.D. Va. 1988); *All Risks, Ltd. v. Crump Ins. Servs., Inc.*, No. CCB-10-1554, 2011 WL 1298541, at *3–4 (D. Md. Mar. 31, 2011).

While Nielsen also relies on § 1404(b) of Title 28 of the United States Code, that section does not apply here because comScore has not consented to a transfer. Section 1404(b) provides

that "[u]pon motion, consent or stipulation *of all parties*, any action, suit or proceeding of a civil nature . . . may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district." *Id.* (emphasis added). Section 1404(b) thus requires the consent "of all parties" in order for it to apply.[3]

As Wright & Miller explains, "subdivision (b) . . . allows the district court to transfer a case from one division to another within the same district *if all parties request or consent to this*." Charles A. Wright, et al., *Fed. Prac. & Proc. Juris.* § 3842 (3d ed., 2010 update) (emphasis added). "If some party objects to a change of divisions, the general transfer standards of Section 1404(a) must be met." *Id.* n.3; *see White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999) (distinguishing § 1404(a) from § 1404(b) and, in citing § 1404(b), noting that "appropriate stipulated transfers require the consent of all affected parties"). Accordingly, by its terms, § 1404(a) addresses not only requests to transfers to "other district(s)," but to other "division(s)" as well. Because "all parties" have not consented to transfer, Nielsen's reliance on § 1404(b) is misplaced. In any event, a § 1404(b) transfer would be inappropriate for the same reasons as a § 1404(a) transfer, as set out in this Memorandum.

Nielsen's request that the Court employ the first-filed doctrine is similarly incorrect. comScore's claims in this case would only be permissive, and not compulsory, counterclaims in *Nielsen v. comScore* pursuant to Federal Rule of Civil Procedure 13, as comScore's claims of infringement of its own patents do not arise out of the same "transaction or occurrence," Fed. R. Civ. P. 13(a), as Nielsen's claims of infringement of different patents. Nielsen's argument that the first-filed doctrine should apply to claims arising out of a different transaction or occurrence would effectively eliminate Federal Rule of Civil Procedure 13(b), which provides that a

---

[3] Section 1404(b) provides an exception to its consent requirement for certain in rem actions, which does not apply here.

permissive counterclaim "may," but not must, be brought as a counterclaim. As the district court in *Merrick Bank Corp. v. Savvis, Inc.*, No. 4:08-CV-675, 2008 WL 5146545, at *2 (E.D. Mo. Dec. 8, 2008), recently explained with respect to permissive crossclaims, "if the first-filed rule could preempt this action in favor of the Cumis action, it would essentially transform Plaintiff's claim in the present case into a compulsory cross-claim in the Cumis action. This would [improperly] make Cumis the master of Plaintiff's claim."

Furthermore, the Federal Circuit has recently criticized adherence to the first-filed rule, explaining: "Instead of . . . automatically going with the first filed action, the more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a)." *Micron Tech., Inc. v. Mosaid Tech., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). Courts have routinely declined to apply the first-filed doctrine where, as here, different patents are at issue in both cases, involving different facts.[4] In any event, "[e]xceptions [to the first-filed doctrine], . . . are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). For the reasons set forth below, those exceptions would apply here.

---

[4] *See, e.g.*, *Shizzle Pop, LLC v. Wham-O, Inc.*, No. CV-10-3491, 2010 WL 3063066, at *2 (C.D. Cal. Aug. 2, 2010) ("While the Pennsylvania Action also alleges mismarking of the Pro Classic, it alleges that the Pro Classic was mismarked with a different patent . . . . Because this action is not duplicative of the Pennsylvania action, the first-filed rule does not apply."); *Intervet, Inc. v. Merial Ltd.*, 655 F. Supp. 2d 131, 135 n.4 (D.D.C. 2009) ("[O]pinions of the Federal Circuit addressing the first-to-file rule in patent cases assume that the rule might apply under *specific circumstances*: when one action alleging patent infringement and another seeking a declaration of noninfringement *of the same patent* are pending.") (emphasis added); *APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*, 295 F. Supp. 2d 393, 397 (D. Del. 2002) ("[I]n this case, different patents and different claims are involved in the Texas and Delaware actions. . . . [T]he addition of the APV patents not only involves claims not asserted in Texas, but it also involves facts not involved in the Texas action.").

**II.     The Transfer Factors Counsel Heavily Against Granting Nielsen's Late Motion**

Nielsen bears the burden to "show[] that the transferee venue is *clearly more convenient* than the venue chosen by the plaintiff." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1997 (Fed. Cir. 2009) (quotation marks omitted; emphasis added). Nielsen has failed to meet that burden. At the outset, Nielsen's motion fails to address several of the transfer factors set out in § 1404(a) and by the Federal Circuit. Accordingly, Nielsen has forfeited any arguments relating to convenience of the parties, convenience of witnesses, and several public and private interest factors. Given that § 1404(a) requires "individualized, case-by-case consideration of convenience and fairness," *In re Vistaprint Ltd.*, 628 F.3d at 1346 (quotation marks omitted), Nielsen's motion can be denied on the ground that Nielsen has failed to meet its burden.

Moreover, § 1404(a) and the public and private interest factors indicate that transfer is not warranted. No factors counsel in favor of transfer:

| Factor | Application of Factor | Counsels Against / in Favor of Transfer? |
|---|---|---|
| convenience of parties | Alexandria Division is far more convenient for comScore, which is based in this Division; if a transfer is granted, comScore (including its CEO and CTO, who are inventors) will be required to travel to Norfolk. | Against |
| convenience of witnesses | Alexandria Division is far more convenient for the vast majority of witnesses in this case, who are based in or very near this Division. *See* Background. | Against |
| relative ease of access to sources of proof | Sources of proof relating to comScore and numerous inventors are located in this | Against |

| | Division. *See* Background. | |
|---|---|---|
| availability of compulsory process to secure the attendance of witnesses | | Neutral |
| the cost of attendance for willing witnesses | Numerous comScore witnesses and inventors would be required to travel far from home and work in order to testify. *See* Background. | Against |
| all other practical problems that make a trial easy, expeditious, and inexpensive | This case involves separate patents involving different technology, arising out of a separate transaction or occurrence. *See* Background and *infra*. Transferring this case to the judge assigned to *Nielsen v. comScore* would unnecessarily burden that court with an unrelated case. | Against |
| administrative difficulties flowing from court congestion | | Neutral |
| local interest in having localized interests decided at home | Plaintiff comScore's choice to bring this case at its home courthouse should be accorded significant weight. | Against |
| familiarity of the forum with the law that will govern the case | | Neutral |
| avoidance of unnecessary problems of conflicts of laws or in the application of foreign law | | Neutral |

Nielsen's arguments to the contrary are not well-supported. Nielsen argues that both cases involve the same lawyers, but that is not a transfer factor and ignores the reality that different lawyers may focus on one case or the other. Nielsen argues that "discovery will substantially overlap," Mem. at 9, 12, but makes speculative arguments and does not

-12-

demonstrate any significant overlap regarding the central issues of each case. To the contrary, both cases involve different patents, different inventors, and different products. Nielsen argues that the parties' agreement regarding "cross-use of . . . documents in both cases," Mem. at 1, 12, supports transfer, but Nielsen neglects to mention that this agreement, by its terms, was "reached . . . solely for the purpose of convenience of counsel, without expressing any position on the relevance of such materials to either case." Dkt. No. 22, para. V(E). The agreement does not counsel in favor of a transfer, but rather reflects Nielsen's earlier, contrary position that transfer was unwarranted.[5]

Nielsen argues, at a broad level, that "[a]ll the patents at issue are related to monitoring and measuring online and computer activities." Mem. at 10. That unhelpful generalization misses the mark; the two patents at issue in this case involve the identification of specific persons, while the *Nielsen v. comScore* patents relate to several other alleged inventions, as set out in the table in the Background section. Moreover, as numerous courts have recognized, "[t]he mere fact that both cases involve the same parties and some sort of DNA technology," or in this case Internet-related technology, "is not sufficient to weigh in favor of transfer." *Invitrogen Corp. v. Gen. Elec. Co.*, No. 6:08-CV-113, 2009 WL 331889, at *4 (E.D. Tex. Feb. 9, 2009); *see SeQual Tech., Inc. v. Stern*, No. 10-cv-2655, 2011 WL 1303653, at *3 (S.D. Cal. Apr. 4, 2011) ("Defendants ignore that the cases involve different patents held by different

---

[5] If anything, removing the need for duplicative document productions counsels against transfer. *See Cummins-Allison Corp. v. Glory Ltd.*, Civ. No. 2-03-CV-358, 2004 WL 1635534, at *3 (E.D. Tex. May 26, 2004) ("In fact, the parties agreed with Judge Conlon's conclusion that 'interrogatories, depositions, and so forth, that have been taken in Judge Guzman's case to the extent they touch on the same issues or related issues' should not be duplicated. Thus, the Court finds that transferring the case to Illinois will not result in any significant efficiencies and that keeping the case in this Court will not result in any significant inefficiencies.").

companies, as well as different accused products.").[6] The two related patents in this case, and the five patents asserted by Nielsen in *Nielsen v. comScore*, will require the gathering of separate evidence, will require separate claim construction proceedings, and will require separate rulings on the merits. Nielsen has not met its burden to show any sufficient interest in litigating all of these unrelated patents together, particularly where all other factors counsel against transfer.

Finally, Nielsen argues that "comScore will not be prejudiced if this case is transferred and consolidated" with the Norfolk action. Mem. at 12. comScore vigorously disagrees. The Norfolk case remains at a very early stage, with the parties litigating a substantive motion to dismiss. *See* Exs. C–E. No discovery has begun in that case, and a case management conference is at least weeks away. In contrast, significant progress has been made in this case, with: (i) the parties having exchanged interrogatories and requests for production covering the vast majority of the case, with responses that either were served or are due this week; (ii) the parties having completed a Joint Discovery Plan, *see* Dkt. No. 22; (iii) the Court having entered a Scheduling Order, *see* Dkt. Nos. 24, 25; (iv) the parties having negotiated and filed an electronic discovery stipulation, *see* Dkt. No. 38; (v) the parties having nearly completed protective order negotiations; (vi) the parties scheduled to begin document productions in mid-May at the latest; and (vii) the parties scheduled to serve expert reports in less than two months.

---

[6] *See also, e.g.*, *Everpure, LLC v. Selecto, Inc.*, 2010 WL 480970, at *3 (C.D. Cal. Feb. 3, 2010) ("The mere *similarity* of patents and identity of parties is insufficient to warrant a discretionary transfer.") (emphasis in original); *Sofamor Danek Holdings Inc. v. United States Surgical Corp.*, 49 U.S.P.Q.2d 2016 (W.D. Tenn. 1998) (policies that typically justify transfer to a forum hearing a related case are not served in a case involving a different patent and construing different claim terms); *Square D Co. v. Medar Inc.*, No. 94-184, 1994 WL 859606, at *3 (D. Del. Aug. 31, 1994) ("Based upon Square D's representations that the action at bar and the Michigan action do not involve the same product lines, the Court concludes that Medar has not demonstrated that the balance of convenience of the parties and witnesses, and the interest of justice, weigh strongly in favor of transfer.").

Nielsen began discovery in this case without mentioning transfer and, in fact, agreed earlier that this case was "limited" and a "narrow and focused inquiry," that could be resolved "quickly as a separate matter."  Mem. at 10.  Adding the related '285 patent, with a specification that is identical in all material respects to the patent-in-suit, changes nothing.  This case is on track to be resolved quickly and efficiently.[7]  No interest is served by slowing this case down and burdening the Norfolk court with an unrelated case involving separate technology and products.

## CONCLUSION

For the foregoing reasons, Nielsen's motion to transfer should be denied.[8]

Respectfully submitted,

Date: May 4, 2011

By: */s/ Erica N. Andersen*
Erica N. Andersen (VSB No. 76466)
Lindsay B. Burke (VSB No. 72773)
Steven E. Robertson (VSB No. 78984)
Richard L. Rainey (*pro hac vice*)
Kevin B. Collins (*pro hac vice*)
Brian Bieluch (*pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
eandersen@cov.com
lburke@cov.com
srobertson@cov.com
rrainey@cov.com
kcollins@cov.com
bbieluch@cov.com
Tel: (202) 662-6000

---

[7] Nielsen's argument regarding comScore having withdrawn its proposed amendment relating to U.S. Patent No. 7,849,154, *see* Mem. at 11, is a red herring.  Penalizing a plaintiff's choice regarding the assertion of a patent would run afoul of the doctrine that, "[u]nder well-settled principles of pleading, the plaintiff is the master of the statement of his claim."  14AA Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 3702 (4th ed., 2011 update).

[8] A proposed order denying Nielsen's motion to transfer is attached to this Opposition as Exhibit 2.

Fax: (202) 662-6291

Stephen E. Noona (VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com
Tel: (757) 624-3239
Fax: (757) 624-3169

*Attorneys for Plaintiff comScore, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 4th day of May 2011, I will electronically file the foregoing *comScore, Inc.'s Opposition to Defendants' Motion to Transfer*, *Declaration of Brian Bieluch in Support of comScore Inc.'s Opposition to Defendants' Motion to Transfer* (with supporting Exhibits A-E), and *Proposed Order* and with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Walter D. Kelley, Jr.
Tara Lynn R. Zurawski
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel:  (202) 879-3939
Fax: (202) 626-1700
Email: wdkelley@jonesday.com
        tzurawski@jonesday.com

*Counsel for Defendants*

                                      */s/ Erica N. Andersen*
                                      Erica N. Andersen (VSB No. 76466)
                                      COVINGTON & BURLING LLP
                                      1201 Pennsylvania Avenue NW
                                      Washington, D.C. 20004-2401
                                      Telephone: (202) 662-5549
                                      Fax: (202) 778-5549
                                      eandersen@cov.com

                                      *Counsel for Plaintiff*