**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| COMSCORE, INC., | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | No. 1:11-CV-290-LMB-TRJ |
|  | ) | |
| THE NIELSEN COMPANY (US), LLC, | ) | JURY TRIAL REQUESTED |
| and NETRATINGS, LLC d/b/a | ) | |
| NIELSEN ONLINE, | ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |

**PLAINTIFF COMSCORE, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 1**

Pursuant to the Federal Rules of Evidence and this Court's inherent authority to manage the course of trials, *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984), Plaintiff comScore, Inc. ("comScore") moves that the Court preclude Nielsen from introducing the following: (1) any allegations that comScore is a "spyware" company or that it installs its panelist monitoring software without consent; (2) any allegations that comScore has deceived its customers; (3) any references to the co-pending Norfolk litigation and the parties' claims therein; and, (4) any allegation that comScore did not mark its products pursuant to 35 U.S.C. § 287.

**LEGAL STANDARD**

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Only relevant evidence is admissible. Fed. R. Evid. 402.

Even if evidence is relevant to an action, it should nevertheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

I.  **The Court Should Exclude Allegations (a) That comScore's Panelist Monitoring Software is "Spyware", (b) That comScore's Software is Placed on Panelists' Computers Without Their Consent, and (c) That comScore Has Engaged in "Deception"**

It is abundantly apparent from Nielsen's argument in Opposition to comScore's Motion for Summary Judgment (Dkt. No. 162), its proposed exhibit list (Dkt. No. 107), and its conduct through discovery in this case that Nielsen intends to introduce several irrelevant allegations against comScore that would, if admitted, be unduly prejudicial. Specifically, it appears Nielsen seeks to impermissibly prejudice the jury by arguing that (a) comScore is a "spyware" company, that (b) comScore installs its panelist monitoring software without consent, and that (c) comScore has engaged in vague "deceptions" of its customers. None of these arguments have any bearing on any claim or defense in this action. Because courts in jury trials should "prevent inadmissible evidence from being suggested to the jury by any means [ . . .]," Fed. R. Evid. 103(c), comScore moves *in limine* to bar the introduction of Defendants' Exhibit Nos. 39, 125, 144, and 2043, and all testimony and argument directed to these irrelevant allegations.

A.  **Background**

Defendants' Exhibit Nos. 39, 125, 144, and 2043 date from 2003 to 2008. All deal with allegations that do not relate to the patents-in-suit, the proper claim-construction or validity thereof, or Nielsen's alleged infringement. By the time that Nielsen had begun to pursue

discovery based upon these exhibits, it was further clear that none was relevant to any theory of damages that comScore was pressing.[1]

        1.        Defendants' Exhibits Number 144 and 39 and Allegations Characterizing comScore as a "Spyware" Company

        a)        Defendants' Exhibit Number 144

Nielsen throughout discovery sought to portray comScore as a "spyware" company. For example, during the deposition of comScore's Chief Executive Officer, Dr. Magid Abraham, counsel for Nielsen questioned the witness regarding a 2005 article (Def. Trial Ex. 144) that detailed one university's decision to block MarketScore, a branded version of comScore's panelist monitoring program,[2] from the university. (Robertson Decl., Ex. E., Deposition of Magid Abraham ("M. Abraham Dep."), 134:17–141:3); (Robertson Decl., Ex. F, M. Abraham Dep., Ex. 14.) Nielsen's counsel also questioned Dr. Abraham regarding the "propriety" of installing software on panelists computers and the affect that practice had on potential customers' decisions when choosing between purchasing services from comScore or Nielsen. (Robertson Decl., Ex. E., 135:14–136:3.)

        b)        Defendants' Exhibit Number 39

In yet another deposition, Nielsen questioned comScore's Chief Technical Officer Mike Brown about an internal comScore presentation (Def. Trial Ex. 39) that purported to state that

---

[1] comScore's economic expert, Philip Green, initially opined that comScore was entitled to lost profits on the '285 patent beginning with the date of issue, April 19, 2011. *See,* Robertson Decl., Ex. A, at 2–3 (July 1, 2011). In his Supplemental and Rebuttal Report, Mr. Green revised his opinion, opining that a lump sum payment of between $12 million and $16 million would represent a reasonable royalty for the '285 patent. *See*, Robertson Decl., Ex. B., at 2 (August 5, 2011)) Mr. Green never offered an opinion that comScore was entitled to lost profits on the '837 patent. Robertson Decl., Ex. A., at 2. Mr. Green confirmed at his deposition that he is not offering an opinion that comScore is entitled to lost profits. *See*, Robertson Decl., Ex. C., at 255:9–19.)

[2] comScore internally refers to its panelist monitoring software as CProxy. *See*, Robertson Decl., Ex. D, at CSC 00516173.

certain software manufacturers had blocked comScore's panelist monitoring software. *See*, Robertson Decl., Ex. G. ("Brown 30(b)(6) Dep.") at 187:21–192:12; Ex. H., Brown 30(b)(6) Dep., Ex 23.

    2.  Defendants' Exhibit Number 2043 or Allegations that comScore Installs Its Panelist Monitoring Software Without Consent

In another deposition, Nielsen's counsel questioned comScore's Chief Marketing Officer and Executive Vice President Linda Abraham about an article (Def. Trial Ex. 2043) that accused comScore of not obtaining consent from a panelist before installing comScore's software on the panelist's computer. *See*, Robertson Decl., Ex. I, Deposition of Linda Abraham ("L. Abraham Dep."), 127:1–136:17; Robertson Decl., Ex. J, L. Abraham Dep., Ex. 8. Nielsen's counsel questioned whether such concerns contributed to lost sales to Nielsen.

On October 20, 2011, Nielsen, in its Brief In Opposition To comScore's Motion For Proposed Claim Constructions And Partial Summary Judgment Of Infringement, Nielsen asserted that "[m]any in the industry have alleged that comScore panelists do not consent to comScore's installation of software on their computers and are, actually, unaware that they are part of comScore's panel." (Dkt. No. 162 at 2–3.)

    3.  Defendants' Exhibit No. 125 or Allegations that comScore "Deceives" Its Customers

Ms. Abraham was also questioned concerning an email conversation between herself and Dr. Abraham (Def. Tr. Ex. 125) where she reported that Josh Chasin, comScore's then Chief Research Officer, had expressed concerns about "deception." *See*, Robertson Decl., Ex. J., 117:10–126:22; Robertson Decl., Ex. K, L. Abraham Dep., Ex. 7. In his Rebuttal Expert Report, Nielsen's economic expert, Brett Reed, referred to the email in a footnote while disputing Mr. Green's valuation of the '837 patent. *See*, Robertson Decl., Ex. L., at n.22.

**B.     Argument**

While deposing comScore's witnesses, Nielsen has consistently sought to inquire into the matters referenced above, which clearly have no bearing on any claim or defense in this patent infringement action. Nielsen's proposed exhibit list confirms that it may attempt to introduce these irrelevant and unduly prejudicial allegations. Nielsen cannot now plausibly present any reason why these topics should be heard by the jury.

> 1.     References To comScore's Meter Software as "Spyware" and Allegations That comScore Installs Its Software Without Panelists' Consent Should Be Excluded As Irrelevant, Or In the Alternative, As Unduly Prejudicial.

Nielsen admits that the question of whether comScore's panelists consent to having comScore's metering software installed on their computers is "immaterial" to the issues of infringement and claim-construction. (Dkt No. 162 at 3.) Permitting these "spyware" allegations would only serve to unduly prejudice the jury while serving no probative purpose.

These unsupported allegations that comScore's meter program is "spyware"[3] are irrelevant, and they are also clearly prejudicial to comScore. *See* Fed. R. Evid. 403. The Court should bar the introduction of Defendants' Exhibits 144 and 2043 and any argument or testimony suggesting that comScore's panelist monitoring software is "spyware" or that comScore does not get its panelists' consent before downloading its meter software.

---

[3] "Spyware" has a number of pejorative connotations. *See Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1172 (9th Cir. 2009) ("Spyware, which is often installed on a computer without the user's knowledge or consent, covertly monitors the user's activities and exposes the user to the risk that his or her passwords and confidential information may be stolen.").

        2.        Allegations of "Deception" Should Be Excluded As Irrelevant, Or In the Alternative, As Unduly Prejudicial.

It is unclear exactly what Nielsen believes is described in Defendants' Exhibit No. 39. (Robertson Decl., Ex. J, L. Abraham Dep., Ex. 7.) The exhibit contains several layers of hearsay purporting to show what an employee, Director of Research Josh Chasin, described as deception. The e-mail has no relevance to this patent infringement action. Allowing the e-mail, and related testimony, to be admitted would be highly prejudicial. The e-mail and related testimony should be accordingly excluded.

## II. THE COURT SHOULD EXCLUDE ALL REFERENCES TO THE CO-PENDING NORFOLK LITIGATION AND THE PARTIES CLAIMS THEREIN

comScore requests that the Court exclude any and all references to the co-pending litigation between the parties in the Norfolk Division of this Court, *The Nielsen Company (US), LLC v. comScore, Inc.*, No. 2:11-cv-168-MSD-TRJ (the "Norfolk action"). The Norfolk action involves seven other patents—five that Nielsen has asserted against comScore, and two that comScore has asserted against Nielsen in counterclaim. Nielsen's counsel has agreed that there is "no overlap" between this case and the Norfolk action. *See* Motions Hearing Before the Honorable Leonie Brinkema, at 12:12–25 (Oct. 27, 2011) (Dkt No. 194.) Therefore, the Court should exclude any reference to the Norfolk action as irrelevant. *See* Fed. R. Evid. 402.

At least one way that Nielsen has sought to unduly inject issues from the Norfolk action into the present case is through its damages expert, Mr. Brett Reed. In his report, Mr. Reed opined that comScore would not "seek a larger royalty" because "it would need to be concerned about the impact of making unreasonable royalty demands on Nielsen when it takes into account the potential of facing royalty demands from Nielsen for important Nielsen patents." Reed Report, at 50-–51. But neither the existence of a separate dispute nor the fact that Nielsen also owns patents are factors relevant under *Georgia-Pacific Corp. vs. U.S. Plywood Corp.*, 318 F.

Supp. 1116, 1120 (S.D.N.Y. 1970).  Any attempt to use the Norfolk litigation in this respect is without basis.

Even if the Norfolk action and Nielsen's patents had some marginal relevance to issues in the case, this evidence should still be excluded because the limited probative value of that evidence would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403; *see In re Outsidewall Tire Litig.*, 748 F. Supp. 2d 543, 555 (E.D.Va. 2010) (upholding exclusion of patent file history "given its slight probative value and the manifest, substantial potential for jury confusion").  In particular, the introduction of allegations in this case that comScore has been accused elsewhere of infringing Nielsen patents—let alone evidence relating to the merits of those allegations—would amount to a trial-within-a-trial that confuses and misleads jurors with respect to the issues they are actually being asked to determine.

**II.     THE COURT SHOULD EXCLUDE ALLEGATIONS REGARDING COMSCORE'S MARKING OF PRODUCTS**

Any reference to comScore's compliance with the patent marking statute, 35 U.S.C. § 287, should be precluded.  In general, the statute "penalizes the use of unauthorized marks upon manufactured article" and limits the extent to which damages may be recovered where products covered by a U.S. patent are sold without the notice defined in the statute."  *Texas Digital Sys., Inc. v. Telegenix Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002).  Here, comScore has met these requirements because Nielsen received actual notice of comScore's allegations of infringement of U.S. Patent No. 7,930,285 (the "'285 patent") the day the patent issued and comScore has not sold a product that is covered by the invention claimed by U.S. Patent No. 7,260,837 (the "'837 patent").  As such, any evidence regarding any alleged failure to mark pursuant to § 287 is irrelevant.

35 U.S.C. § 287 requires "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States" to mark the patented article with "patent" or "pat." followed by the patent number. 35 U.S.C. § 287. In the absence of such marking, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement." *Id.* Filing of an action for infringement shall constituted such notice. *Id.* Section 287 "does not specify when or under what circumstances damages may be recovered. Rather, it describes circumstances that effect a forfeiture of damages." *Texas Digital Sys., Inc.*, 308 F.3d at 1219–20. "The recovery of damages is not limited where there is no failure to mark, *i.e.*, where the proper patent notice appears on products or where there are no products to mark." *Id.* at 1220. Accordingly, patentees do not forfeit damages under the statute when they do not market a product that embodies the claimed invention because there is nothing for the patentee to mark. *See Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.*, 297 U.S. 387, 395 (1936).

A.   **Marking With Regard to the '837 Patent Was Not Required.**

Nielsen may take the position that comScore's relevant commercial products should have been marked with the '837 patent. *See* (Ex. L, Reed Report, at 12). This position does not, however, take into account the fact that the data derived from methodologies claimed by the '837 patent is not presently included in the reports that comScore makes, offers for sale, or sells within the United States. comScore stated in its interrogatory responses and Mike Brown, comScore's Chief Technology Officer, has stated that data collected from the methodologies claimed in the '837 patent is not included in the reports that comScore markets. *See*, Robertson Decl., Ex. M; *see also* Robertson Decl., Ex. N, at 225:7–238:12.

Because comScore has not sold a product that embodies the inventions claimed in the '837 patent, comScore was not required to mark products with the '837 patent pursuant to 35

U.S.C. § 287 as a matter of law. *See Wine Ry. Appliance Co.*, 297 U.S. at 395; *Texas Digital Sys., Inc.*, 308 F.3d at 1219-20. Thus, any evidence purportedly offered to the contrary is misplaced and irrelevant to the issues before the Court.

### B. Marking With Regard To the '285 Patent Was Not Required.

Nielsen received actual notice of its infringement of the '285 patent on the date it issued. *See* Robertson Decl., Ex. O. comScore further sought notice to amend its complaint to assert the '285 patent on April 22, 2001. (Dkt. No. 26.) comScore's motion was granted on May 9, 2011. (Dkt. No. 50.) comScore's amended complaint was filed the same day. (*See* Dkt. No. 51.) This notice satisfies the requirements of § 287 with respect to the '285 patent. Any evidence offered by Nielsen at trial to show that comScore failed to comply with § 287 with respect to the '285 patent is irrelevant or, at the very least, unduly prejudicial.

For the foregoing reasons, any attempt by Nielsen to introduce evidence regarding whether comScore marked its products in compliance with 35 U.S.C. § 287 should be excluded as irrelevant or, in the alternative, as substantially more confusing and misleading than probative of any issues in the case.

### CONCLUSION

For the foregoing reasons, comScore respectfully requests that the Court exclude:

1. Defendants' Exhibits 39 and 144 and all allegations that comScore is a "spyware" company.

2. Defendants' Exhibit 2043 and all allegations that comScore installs its panelist monitoring software without its panelists' consent.

3. Defendants' Exhibit 125 and all allegations that comScore "deceives" its customers.

4. All references to the co-pending Norfolk litigation between the parties.

9

5. All allegations regarding comScore's marking of products.

Respectfully submitted,

Date: November 7, 2011

By: /s/ Steven E. Robertson
Steven E. Robertson (VSB No. 78984)
Lindsay B. Burke (VSB No. 72773)
Richard L. Rainey (*pro hac vice*)
Kevin B. Collins (*pro hac vice*)
Brian Bieluch (*pro hac vice*)
Erica N. Andersen (VSB No. 76466)
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
srobertson@cov.com
lburke@cov.com
rrainey@cov.com
kcollins@cov.com
bbieluch@cov.com
eandersen@cov.com
Tel: (202) 662-6000
Fax: (202) 662-6291

K. Courtney Macdonald (VSB No. 77014)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
cmacdonald@cov.com
Tel: (212) 841-1000
Fax: (212) 841-1010

Stephen E. Noona (VSB No. 25367)
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
senoona@kaufcan.com
Tel: (757) 624-3239
Fax: (757) 624-3169

*Attorneys for Plaintiff comScore, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of November 2011, I will electronically file *Plaintiff comScore, Inc.'s Memorandum in Support of its Motion in Limine No. 1, and Declaration of Steven Robertson With Exhibits A-O* with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Walter D. Kelley, Jr.
Tara Lynn R. Zurawski
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel:  (202) 879-3939
Fax: (202) 626-1700
Email: wdkelley@jonesday.com
        tzurawski@jonesday.com

*Counsel for Defendants The Nielsen Company (US), LLC and NetRatings, LLC.*

Dated: November 7, 2011

/s/ Steven E. Robertson
Steven E. Robertson (VSB No. 78984)
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
srobertson@cov.com
Tel: (202) 662-5993
Fax: (202) 778-5993

*Counsel for Plaintiff comScore, Inc.*